**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | Crim. No. 04-162 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| HARRY G. PARKIN, | : | |
| Defendant. | : | |

**BROWN, District Judge**

  This matter comes before the Court upon Defendant Harry G. Parkin's ("Defendant")

motion for acquittal and a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33.

Oral argument on this motion was heard on April 25, 2005.  The Court, having reviewed the

parties' written submissions and oral argument, and for the reasons discussed herein, denies the

motion.

## I.  BACKGROUND

  On March 11, 2004, Defendant was charged in a thirteen court indictment.  Defendant

was indicted on twelve counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1346 for

allegedly participating in a scheme to defraud the public of honest services, money and property.

Count 13 of the Indictment charged Defendant with attempted extortion under color of official

right and by wrongful use of fear of economic harm in violation of the Hobbs Act, 18 U.S.C. §§

1951(a) and 2.  Trial by jury began on February 3, 2004.  On March 21, 2005, the jury found

Defendant guilty on all counts.  Defendant now moves for acquittal or a new trial pursuant to

Federal Rules of Criminal Procedure 29 and 33.[1]


**II.     DISCUSSION**

**A.     Standards of Review**

    **1.     Motion for Acquittal Under Rule 29**

Federal Rule of Criminal Procedure 29(c)(1) provides, in pertinent part, that after a jury

verdict, "a defendant may move for a judgment of acquittal." FED. R. CRIM. P. 29(c)(1) (2005).

In determining a post-verdict motion for acquittal, the Court "must view the evidence in the light

most favorable to the jury verdict and presume that the jury properly evaluated [the] credibility of

witnesses, found the facts, and drew rational inferences." United States v. Iafelice, 978 F.2d 92,

94 (3d Cir. 1992). "[T]he court must examine all of the evidence presented by the Government

taken as a whole, and not consider pieces of evidence in isolation." United States v. Picciotti, 40

F. Supp. 2d 242, 245 (D.N.J. 1999). The Supreme Court clarified that "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* trier of

fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.

Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Reversal on the ground of insufficient

evidence "will be confined to cases where the prosecution's failure is clear." Burks v. United

States, 437 U.S. 1, 17 (1978). The defendant bears a heavy burden when challenging the

---

[1] Defendant also includes Federal Rule of Criminal Procedure 34 in his motion as grounds for relief. Rule 34 provides that a court must arrest judgment if: 1) "the indictment or information does not charge an offense"; or 2) "the court does not have jurisdiction of the charged offense." FED. R. CRIM. P. 34(a) (2005). As discussed herein, Defendant fails to raise allegations that support relief under this rule. Consequently, the Court denies Defendant's motion on this basis.

sufficiency of the evidence, <u>see</u> <u>Picciotti</u>, 40 F. Supp. 2d at 245, and cannot succeed by merely

rearguing his defense.  <u>See</u> <u>United States v. Smith</u>, 186 F.3d 290, 294 (3d Cir. 1999), <u>superseded</u>

<u>by statute on other grounds as stated in</u> <u>United States v. Diaz</u>, 245 F.3d 294, 303 (3d Cir. 2001).

The Court finds that the Defendant has failed to satisfy his heavy burden.  Over the

course of the six-week trial, the Government introduced substantial evidence that: (1) the

Defendant knowingly and willfully participated in a scheme that deprived the Mercer County

Government, the Mercer County Improvement Authority ("MCIA") and the citizens of Mercer

County of his honest and faithful services as the Mercer County Chief of Staff; and (2) the

Defendant attempted to obtain an ownership interest in Central Jersey Waste and Recycling

("CJWR") through extortion committed under color of official right or through wrongful use of

fear of economic harm.  This Court will not endeavor to summarize the voluminous evidence and

testimony presented over the six weeks of this trial.  However, the Court emphasizes that the

government presented copious evidence from which a reasonable fact finder could have found

the essential elements of the crimes beyond a reasonable doubt.

In particular, the Court notes that the government offered lengthy testimony from co-

conspirators Alex Abdalla ("Abdalla") and James Lambert ("Lambert"), who testified

specifically about, *inter alia*: (1) Defendant's undisclosed loan to CJWR and his desire to acquire

an ownership interest in CJWR; (2) his efforts to steer MCIA contracts to Abdalla  in order to

advance his personal financial interests; and (3) his participation in a scheme designed to oust

Frank Fiumefreddo, Sr. ("Fiumefreddo, Sr.") from CJWR through wrongful use of his official

office and economic threats, including initiating a state police investigation.  Further, the

Government supported the witness's testimony with approximately seven hours of tape recorded

3

conversations that they corroborated on the stand.  Moreover, the Government offered documentary evidence demonstrating that Defendant, through the use of the mails, concealed his loan to CJWR by filtering the money through other corporations and failed to disclose the loan on his state ethics disclosure forms in violation of state law.  Finally, the evidence amply revealed that the Defendant had the requisite intent to defraud and either took official action or intended to take official action that violated his fiduciary duty and abused his authority as a public official.

For the foregoing reasons, and for the reasons discussed below, the Court holds that the evidence presented in this matter, construed in a light most favorable to the government, provided the jury with a sufficient basis to find the Defendant guilty of honest services fraud and attempted extortion.  Accordingly, Defendant's motion for acquittal under Rule 29 must be denied.

### 2.        Motion for a New Trial Under Rule 33

Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial "if the interest of justice so requires."  FED. R. CRIM. P. 33(a) (2005).  The decision to grant a new trial rests within the sound discretion of the trial court.  United States v. Skelton, 893 F.2d 40, 44 (3d Cir. 1990).  A court can grant a new trial based on the weight of the evidence "only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted."  United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003) (quotations and citations omitted).  When evaluating this motion, the court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the

4

Government's case."  Id.  Motions for a new trial are not favored and should be "granted sparingly and only in exceptional cases."  Id. (quoting <u>Gov't of V.I. v. Derricks</u>, 810 F.2d 50, 55 (3d Cir.1987)).

In the present matter, Defendant also fails to demonstrate that a new trial should be granted based on the weight of the evidence.  This Court's independent assessment of the evidence presented at trial, as discussed herein, supports the conclusion that a new trial is unwarranted.  Accordingly, Defendant's motion for a new trial under Rule 33 is denied.

**B.**      **Defendant's Asserted Claims for Acquittal or New Trial**

**1.**      **The Court Properly Precluded the Defendant From Introducing Extrinsic Evidence To Prove Bias**

Defendant contends that this Court erred when it precluded him from introducing extrinsic evidence to establish the bias of government witnesses Abdalla and Lambert. Specifically, the Defendant contends that he should have been able to establish bias by introducing extrinsic evidence of: (1) a State Grand Jury proceeding involving Abdalla and Lambert's alleged theft or diversion of recyclable materials; and (2) an alleged "early payment scheme" designed by Abdalla and Lambert to alleviate Central Jersey's cash flow problems.  <u>See</u> Def.'s Br. at 7-11.  This Court has wide discretion to limit the scope of cross-examination and exclude collateral matters.  <u>See United States v. Casoni</u>, 950 F.2d 893, 918-19 (3d Cir. 1991). "A restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to the substantive rights of the defendant."  <u>Id.</u> at 918-19 (quoting <u>United States v. Adams</u>, 759 F.2d 1099, 1110 (3d

Cir. 1985), cert. denied, 474 U.S. 906).  The Supreme Court has clarified that the "Confrontation

Clause guarantees an opportunity for effective cross-examination, not cross-examination that is

effective in whatever way and to whatever extent, the defense might wish."  Delaware v. Van

Arsdall, 475 U.S. 673, 679 (1986) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per

curiam)).  The Court "retains discretion to impose reasonable limits on defense counsel's inquiry

into the potential bias of a government witness where there is a concern about harassment,

prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only

marginally relevant."  United States v. Beros, 833 F.2d 455, 465 (3d Cir. 1987) (citing Van

Arsdall, 106 S. Ct. at 1435).

Here, the Court gave the Defendant ample opportunity to establish bias by cross-

examining Abdalla and Lambert about, *inter alia*, their plea agreements with the Government,

the State Grand Jury matter and the alleged early payment scheme.  However, the Court did not

permit the Defendant to introduce extrinsic evidence to the extent that he was unsatisfied with

their answers.  The Federal Rules of Evidence "do not by their terms deal with impeachment for

'bias,' although they do expressly treat impeachment by character evidence and conduct [under]

Rule 608 . . ."  Federal Rule of Evidence 608 provides that:

> Specific instances of conduct of a witness, for the purpose of
> attacking . . . the witness' character for truthfulness . . . may not be
> proved by extrinsic evidence.  They may, however, in the discretion
> of the court, if probative of truthfulness or untruthfulness, be inquired
> into on cross-examination of the witness' character for truthfulness
> or untruthfulness.

FED. R. EVID. 608(b) (2005); see e.g. Carter v. Hewitt, 617 F.2d 961, 969 (3d Cir. 1980) ("[I]f the

witness stands his ground and denies the alleged misconduct, the examiner must 'take his

6

answer,' . . . in the sense that he may not call other witnesses to prove the discrediting act."). Further, when determining the permissible scope of cross-examination, the Court must also consider Federal Rule of Evidence 403, which requires that the probative value of the specific instances of conduct not be outweighed by danger of unfair prejudice, confusion of issues or misleading the jury.  See FED. R. EVID. 403 (2005).

This Court finds that the evidence Defendant sought to introduce has little or no probative value and does not tend to establish bias.  "Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."  United States v. Abel, 469 U.S. 45, 52 (1984).  Defendant contends that evidence he sought to introduce regarding the Grand Jury Proceeding and the early payment scheme would somehow demonstrate that Abdalla and Lambert were biased against him.  The Court fails to see the connection.  This Court admitted evidence regarding Abdalla and Lambert's plea agreements because their desire to curry favor with the Government could clearly provide a motive to slant or provide untrue testimony. Unlike their plea agreements, evidence regarding the Grand Jury proceedings and the alleged early payment scheme does not involve Defendant's relationship with the witnesses and does not support the inference that their testimony was somehow slanted against him.  Rather than demonstrating that Abdalla and Lambert were somehow biased against him, this evidence appears to be an effort to undermine their character for truthfulness.

As discussed above, Rule 608 does not permit introduction of extrinsic evidence in order to impeach a witness's character for truthfulness.  Further, this evidence is irrelevant to the charges against Defendant and its probative value, if any, is substantially outweighed by its

potential to confuse the issues and mislead the jury.  Therefore, the Court holds that it properly

precluded the introduction of extrinsic evidence regarding the State Grand Jury proceeding and

the alleged early payment scheme.  Accordingly, Defendant's motion for a new trial cannot be

granted on this basis.


**2.      The Court Properly Precluded Defendant from Asserting
         Claims of Outrageous Conduct by the Government**

Defendant argues that acquittal and a new trial should be granted under Rules 29 and 33

because Defendant was precluded from asserting claims of outrageous government misconduct

before the jury.  Defendant argues that he should have been able to introduce evidence

concerning alleged illegal activities of government informants to show their bias and to establish

the alleged government misconduct.  As the Court previously ruled, this is an issue solely for the

Court.  United States v. Engler, 806 F.2d 425, 430 (3d Cir. 1986) ("The question whether

government conduct was so outrageous as to constitute a violation of due process is a question of

law to be determined by the court, not the jury.").  Such issues have no bearing as to Defendant's

guilt or innocence, and thus, evidence pertaining to these matters was properly excluded.  See

United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973) ("By both tradition and

constitutional mandate the jury is given the responsibility of determining guilt or innocence

according to instructions of law delivered by the court.").  Defendant fails to raise new arguments

or cite additional authority that would warrant reversal of this Court's prior ruling.  Accordingly,

Defendant's motion on this ground is denied.

**3.**      **The Court Properly Instructed The Jury Regarding The Mail Fraud Scheme**

Defendant contends that this Court's jury instruction regarding honest services mail fraud was deficient for several reasons.  The Court notes that it heard lengthy arguments on this issue during pre-trial motions and before issuing its charge to the jury.  The Court's reasoning is embodied in its charge to the jury.

Defendant first argues that the Court erred because it did not clarify that Defendant must have taken or intended to take action in his official capacity to benefit his concealed financial interest in CJWR.  This Court's charge reads:

> It is insufficient to merely have an undisclosed financial interest.  It must also be established beyond a reasonable doubt that: (1) the governmental official had discretionary authority by virtue of his public office to benefit his undisclosed financial interest, and (2) took or intended to take action in his official capacity to benefit his concealed financial interest.

(Jury Charge at 43).  In essence, Defendant contends that there is no connection between his undisclosed loan to CJWR and the actions he took in his official capacity to benefit Abdalla Contracting, a separate company engaged in the demolition business, because Abdalla had ceded total operational control of CJWR to Frank Fiumefreddo Jr. ("Fiumefreddo, Jr.").  Defendant's argument hinges on a myopic view of the indictment and the evidence presented at trial.

First, it is important to note that Defendant was charged with devising a scheme that deprived the public of his honest services as the Mercer County Chief of Staff.  The Government introduced evidence demonstrating: that Defendant extended a loan to CJWR, the company that the MCIA had awarded the contract to manage the waste and recycling needs of all of Mercer County; that Defendant intentionally concealed this loan and neglected to disclose it on his state

9

ethics disclosure forms as required by state law because it created a conflict of interest and impacted his ability to make disinterested decisions; that Defendant obtained a personal guarantee of the loan from Abdalla and Lambert, and; that he took official action designed to benefit this undisclosed interest by improving the financial fortunes of Abdalla and Lambert. Further, the evidence demonstrated that Defendant, while employed as the Mercer County Chief of Staff, sought to acquire an ownership interest in CJWR.  As the Government points out, "by steering contracts to Abdalla, the defendant advanced his personal financial interest by improving the financial situation of Abdalla, one of his proposed business partners."  (Gov't Br. at 9).  All of Defendant's actions taken in furtherance of the scheme must be considered against the backdrop of his concealed financial interests and his fiduciary duties as a public official, including both the loan and his desire to acquire an ownership interest in CJWR.  Therefore, this Court concludes that it would have been improper and misleading, given the financial interests described in the indictment and the proofs presented at trial, to direct the jury to only consider whether the Defendant took official action to benefit his undisclosed interest in CJWR.

Further, the Court is not persuaded that it erred by failing to instruct the jury that they could also find the Defendant guilty of honest services fraud if they found that he had accepted a bribe in exchange for some official action.  As Defendant acknowledges, "[n]either the indictment or the proofs presented at trial indicated that the jury should have been charged in this manner."  (Def.'s Br. at 19).  As discussed above, the Indictment and proofs presented demonstrate that the Defendant had undisclosed financial interests and took or intended to take official action to benefit those interests.  At oral argument, Defendant suggested that the proofs presented at trial were more closely aligned with the bribery theory of honest services fraud.

10

Defendant contends that to the extent the Government argues that he took official action to benefit Abdalla and Lambert in order to acquire a financial interest in CJWR, this somehow constitutes a bribe or conduct analogous to a bribe.  The Court strains to understand this argument.

> Black's Law Dictionary defines a bribe as:
>
>> Any money, goods, right in action, property, thing of value, or any preferment, advantage, privilege or emolument, or a promise or undertaking to give any, asked, given, or accepted, with a corrupt intent to induce or influence action, vote, or opinion of a person in any public or official capacity.  See e.g. Calif. Penal Code § 7.  A gift, not necessarily of pecuniary value, bestowed to influence the conduct of the receiver.

BLACKS LAW DICTIONARY 190 (6th ed. 1990).  Merriam-Webster Online Dictionary defines a bribe as: "(1) money or favor given or promised in order to influence the judgment or conduct of a person in a position of trust;" or "(2) something that serves to induce or influence."  Merriam-Webster Online Dictionary (May 10, 2005), available at http://www.m-w.com.  The Government never intimated that Abdalla or Lambert coaxed or persuaded the Defendant to take action in their favor by offering him a financial benefit in CJWR.  Further, the evidence presented at trial does not suggest that such a quid pro quo existed.  On the contrary, the jury found that Defendant attempted to extort such a benefit from Abdalla.  (See Indictment, Count 13).  Throughout the case, the Government emphasized that Defendant "had a concealed financial interest juxtaposed against which [he] exercised his official authority."  (Gov't Br. at 27).  Thus, there is no variance between the Indictment and the proofs at trial.  Accordingly, the Court concludes that it was unnecessary and would have been confusing to instruct the jury that they could find the Defendant guilty of honest services fraud if he accepted a bribe in exchange for his official

action.

Finally, the Court reiterates that it is immaterial whether the Defendant actually benefitted from his corrupt activities or the governmental organization suffered any actual loss.  "What the government must prove beyond a reasonable doubt is that the defendant intended to deprive the public of his honest services."  (See Jury Charge at 43); see United States v. Antico, 275 F.3d 245, 263 (3d Cir. 2001) (citation omitted) ("When an official fails to disclose a personal interest in a matter over which she has decision-making power, the public is deprived of its rights to disinterested decision making itself or, as the case may be, to full disclosure of the official's potential motivation behind an official act.  Thus, undisclosed, biased decision making for personal gain, whether or not tangible loss to the public is shown, constitutes a deprivation of honest services.") (quoting United States v. Sawyer, 85 F.3d 713, 724 (1st Cir. 1996)).

For the foregoing reasons, the Court finds that it properly instructed the jury regarding the mail fraud scheme.

**4.     The Court Properly Admitted The Statements Of James Lambert and Jerry Fiabane Pursuant To Rule 801(d)(2)**

Defendant contends that the Court failed to determine that a mail fraud scheme existed prior to admitting the statements of Lambert and Jerry Fiabane ("Fiabane") under Federal Rule of Evidence 801(d)(2)(E).  Before admitting "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" under Federal Rule of Evidence 801(d)(2)(E), the Court must find by a preponderance of evidence that the government has demonstrated that:

(1)   a conspiracy existed;
(2)   the declarant and the party against whom the statement is offered were members of the conspiracy;
(3)   the statement was made in the course of the conspiracy; and
(4)   the statement was made in furtherance of the conspiracy.

United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992); see also United States v. Gricco, 277 F.3d 339, 354 (3d Cir. 2002).  The Court may utilize the hearsay statements themselves in determining whether these factors have been satisfied.  See McGlory, 968 F.2d at 333; see e.g. Bourjaily v. United States, 483 U.S. at 178-79.  Further, the indictment need not even charge a conspiracy for a coconspirator's statements to be admissible.  United States v. Ellis, 156 F.3d 493, 497 (3d Cir. 1998).

It was not necessary for this Court to hold a pre-trial hearing to determine the admissibility of Lambert and Fiabane's statements because their admissibility was easily determined at trial.  See United States v. Blackwell, 954 F. Supp. 944, 970 (D.N.J. 1997).  Both Lambert and Fiabane testified in detail regarding their specific involvement in the mail fraud scheme.  Lambert testified regarding his participation from September 2000 through June 2002 and Fiabane testified regarding his participation in the scheme designed to force Fiumefreddo, Sr. out of CJWR.  Further, the Government introduced tape recorded conversations of Fiabane conspiring with the Defendant.  Therefore, this Court had little difficulty concluding that all four factors existed by a preponderance of the evidence and properly admitted the statements of Lambert and Fiabane as statements of coconspirators under Rule 801(d)(2)(E).  Accordingly, Defendant's motion for a new trial cannot be granted on this basis.

13

**5.      Defendant's Claims Regarding Count 13 Are Without Merit**

Defendant raises two grounds with respect to Count 13 as grounds for acquittal or a new trial.  First, Defendant argues that Count 13 of the Indictment should have been dismissed because it violates Federal Rule of Criminal Procedure 8 and the rule against duplicity.[2] "Duplicity is the joining in a single count of two or more distinct and separate offenses."  United States v. Starks, 515 F.2d 112, 116 (3d Cir.1975).  In United States v. Starks, the Third Circuit articulated that "[o]ne vice of duplicity is that a general verdict for a defendant on that count does not reveal whether the jury found him not guilty of one crime or not guilty of both."  Id. Defendant alleges that separate offenses should have been charged for attempted extortion as to each theory alleged.

Defendant's argument fails.  Count 13 of the Indictment charges one offense, namely attempted extortion under the Hobbs Act.  Specifically, the Indictment charged Defendant with knowingly and willfully attempting to obtain an ownership interest, or option to purchase an ownership interest in CJWR, through extortion.  (Indictment at 33).  Thus, Count 13 properly charged a single offense under the Hobbs Act, rather than multiple offenses as Defendant contends.

Further, the government alleged two theories under which Defendant committed the attempted extortion – namely, under color of official right or through fear of economic harm.

_____

[2]  Rule 8(a) provides:
> Joinder of Offenses.  The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.  FED. R. CRIM. P. 8(a) (2005).

This is permissible and does not violate the rule against duplicity.  The rule does not prohibit the government from asserting two theories for the commission of a single crime.  See, e.g., United States v. McDade, 827 F. Supp. 1153, 1187 (E.D. Pa. 1993).  Moreover, the Court properly instructed the jury that in order to find Defendant guilty on Count 13, the jury must unanimously find that "at least one of the theories . . . was proven beyond a reasonable doubt by the government."  (Jury Charge at 52).  Thus, Defendant's argument that the jury did not arrive at a unanimous verdict on Count 13 is without merit.

With regard to Defendant's second argument, Defendant argues that acquittal or a new trial should be granted because the government did not produce the Fiumefreddos, victims of the attempted extortion, at trial.  Defendant contends that the attempted extortion victim's state of mind is a "critical element of the offense."  (Def.'s Br. at 37).  Defendant argues that his conviction on Count 13 should be reversed since the government did not call the Fiumefreddos as witnesses at trial, and their state of mind could not be established.

This argument also fails.  Defendant was convicted of attempted extortion, not extortion, under the Hobbs Act.  To prove attempted extortion, the "inducement to part with property element of the Hobbs Act is satisfied when the alleged extortionist has attempted to induce his victim to part with property."  United States. v. Traitz, 871 F.2d 368, 393 (3d Cir. 1989) (quotations and citation omitted).  Thus, the victim's state of mind is not critical.  Instead, the focus remains on the defendant's intent.  See United States v. Ward, 914 F.2d 1340, 1347 (9th Cir. 1990) (the defendant's attempt to instill fear in the extortion victim, rather than the victim's state of mind, is relevant in attempted extortion); United States v. Smith, 631 F.2d 103 (8th Cir. 1980) ("it is the intent to compel the victim to part with his money that controls" in attempted

extortion); see also 2A Kevin F. O'Malley, *et al.*, FEDERAL JURY PRACTICE AND INSTRUCTIONS §53.05 (5th ed. 2000).  Under the Hobbs Act, proof of an attempt to cause the victim to part with their property or to arouse fear in the victim is sufficient proof of an attempted extortion.  United States v. Frazier, 560 F.2d 884, 887 (8th Cir. 1977); United States v. Nadaline, 471 F.2d 340, 343-44 (5th Cir. 1972).  Thus, proof of the actual generation of fear or the actual parting of property is unnecessary in an attempted extortion charge.

Therefore, the government's failure to produce the Fiumefreddos as witnesses, and the Defendant's inability to confront them at trial, are insufficient grounds for acquittal or a new trial.[3]  Rather, the Court concludes that the government produced abundant proof at trial which demonstrates that Defendant took substantial steps in an effort to accomplish extortion.  For example, the government introduced evidence that Defendant attempted to use his influence over the awarding of the recycling contract to induce Abdalla and Fiumefreddo, Sr. to give up their ownership interests in CJWR.  The government also introduced evidence that Defendant advised Adballa that he would assist him in acquiring the contract for airport demolition work if he gave both Defendant and Lambert ownership interests in CJWR.  Additionally, the evidence demonstrated that Defendant attempted to oust Fiumefreddo, Sr. from CJWR by initiating an investigation with the State Police.  Accordingly, based on the government's introduction of

---

[3] Defendant further argues that the government was obligated to assist Defendant in producing the Fiumefreddos at trial. Defendant cites Pennsylvania v. Ritchie, 480 U.S. 39 (1987) in support of his proposition.  In *Ritchie*, the Court stated: "[o]ur cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."  Id. at 56.  This argument fails since the victim's state of mind was not relevant to the determination of Defendant's guilt with regard to attempted extortion.

sufficient evidence that would allow a reasonable jury to conclude that Defendant attempted to extort under color of official right or through wrongful use of fear of economic harm, Defendant's motion fails.


**6.       The Defendant's Allegations of Multiplicity Are Without Merit**

Defendant contends that the twelve mail fraud counts make the indictment multiplicitous because the facts underlying each count establish "at most two schemes." (Def.'s Br. at 35). This argument cannot succeed. "The United States Courts have consistently held in interpreting the Mail Fraud Statute that each mailing constitutes a separate offense and that the counts of an indictment charging separate and distinct mailing offenses involving the same scheme to defraud cannot be dismissed as multiplicitous." United States v. Schall, 371 F.Supp. 912, 928 (W.D. Pa. 1974) (citing e.g. United States v. Williams, 424 F.2d 344 (5th Cir. 1970)); United States v. Eskow, 422 F.2d 1060 (2d Cir. 1970); Atkinson v. United States, 418 F.2d 1311 (8th Cir. 1969); Sanders v. United States, 415 F.2d 621 (5th Cir. 1969); Hanrahan v. United States, 348 F.2d 363 (1965); Milam v. United States, 322 F.2d 104, 109-110 (5th Cir. 1963); United States v. Brandom, 320 F.Supp. 520 (D.C. Mo. 1970); United States v. Anzelmo, 319 F. Supp. 1106 (E.D. La. 1970); United States v. Mahany, 305 F. Supp. 1205 (N.D. Ill. 1969); United States v. Interstate Eng'g Comm'n, 288 F. Supp. 402 (D.N.H. 1967); United States v. McGuire, 249 F. Supp. 43 (S.D.N.Y. 1965)). Here, the Indictment charged the Defendant with a single scheme to defraud and each of the twelve counts represents a separate and distinct offense of the mail fraud statute. Therefore, Defendant's claim of multiplicity is without merit and cannot constitute a basis for granting his motion.

**7.     The Court Properly Denied The Defendant's Request for
Hybrid Representation**

From the time of the Indictment in March 2004 through the first date of trial in February 2005, the Defendant was represented by David Rhoads, Esq., an experienced criminal defense attorney.  Shortly before jury selection, Defendant for the first time requested that this Court allow him to act as co-counsel along with Mr. Rhoads.  The Court, in its discretion, denied this request.  The jury was then empaneled.  After Mr. Rhoads had presented the opening statement and cross-examined the first witness, Defendant expressed his desire to discharge Mr. Rhoads and proceed as his own attorney.  This Court conducted a searching inquiry to ensure that the Defendant's decision to proceed pro se was knowingly, intelligently and voluntarily made.  It is worth noting that Defendant is a former Mercer County Assistant Prosecutor who, although no longer licensed to practice law, represented that he tried numerous cases in both state and federal court during his legal career.  Although a defendant's right to proceed pro se "is sharply curtailed" once a trial has begun, United States v. Stevens, 83 F.3d 60, 66-67 (2d Cir. 1996), this Court, in its discretion, granted Defendant's request.  The Court reiterated that it would not permit Defendant to proceed as co-counsel with Mr. Rhoads and declined to appoint standby counsel.  However, the Court emphasized that Defendant remained free to consult with Mr. Rhoads, or any other attorney, and placed no restrictions on Mr. Rhoads presence during trial.

Courts have unanimously held that a defendant has no constitutional right to hybrid representation; that is, there is no right to appear partly pro se and party by counsel.  See United States v. Schwyhart, 123 Fed. Appx. 62, 68 (3d Cir. 2005) (citing McKaskle v. Wiggins, 465 U.S. 168, 183 (1984)); see also United States v. Cyphers, 556 F.2d 630, 634 (2d Cir. 1977);

18

United States v. Shea, 508 F.2d 82, 86 (5th Cir. 1975); United States v. Oakley, 853 F.2d 551, 553 (7th Cir. 1988); United States v. Hill, 526 F.2d 1019, 1025 (10th Cir. 1975).  This Court was well within its discretion when it denied Defendant's request.  Therefore, Defendant's motion cannot be granted on this basis.


**8.**     **The Court Should Not Have Reviewed The State Grand Jury Records**

Defendant contends, without legal support, that this Court "should have asked the [S]uperior [C]ourt to review the grand jury file and set forth her concerns about the secrecy of grand jury proceedings in light of what was in that particular file, not on just broad premises of the need for grand jury secrecy."  (Def.'s Br. at 43).  This argument lacks merit.  The state court judge presiding over the grand jury proceedings at issue determined that the documents Defendant sought should remain confidential.  "Among the few limitations to the First Amendment right of access in criminal hearings, none is more important than protecting grand jury secrecy."  Impounded: Newark Morning Ledger, Co., 260 F.3d 217, 221 (3d Cir. 2001).  This Court appropriately deferred to the state court judge's decision and declined to interfere with the grand jury proceedings.

However, Defendant did obtain an affidavit as a result of the state court which indicated that only CJWR, not Abdalla or Lambert, was the subject of an unspecified investigation.  This Court, in its sound discretion, determined that the affidavit lacked probative value and was not relevant to this case.  Therefore, Defendant's motion cannot be granted on this basis.

**III.**      **CONCLUSION**

For the foregoing reasons, Defendant's motion for acquittal or a new trial pursuant to

Federal Rules of Criminal Procedure 29 and 33 is denied.  An appropriate form of Order

accompanies this Memorandum Opinion.


Dated: May 31, 2005


                                          ___s/ Garrett E. Brown, Jr._____
                                          GARRETT E. BROWN, JR., U.S.D.J.